John Marco v. Kerlikowski Aaron Korthuis Good morning, Your Honors. Aaron Korthuis Yeah, go ahead. You can finish your name. Okay. Good morning, Your Honors. Aaron Korthuis on behalf of Appellant Arnaldo Gianmarco. I want to introduce as well the wife of the appellant, Mr. Gianmarco, Sharon Gianmarco. Thanks, Sharon. My question is very simple. We very recently got a 28-J letter. And could you just tell us what impact, if any, the contents of this has on your argument or what we're about to decide, or is it background information? Yes, Your Honor. So in our briefs, we had noted that Mr. Gianmarco had a separate action pending before this Court regarding his naturalization application that the government had appealed. The government withdrew that appeal on Friday, so we're simply noting to the Court that there was an update with respect to that case. What does that mean practically, though, the government withdrawing the appeal? Does it mean he's going to be admitted to the country or not, or does it have any effect on his status? Practically speaking, Your Honor, it means that USCIS must adjudicate Mr. Gianmarco's naturalization application. So that's the status of that case. It doesn't have a bearing on whether or not he would be admitted necessarily. Therefore, it doesn't have a direct or doesn't even have any bearing on the issue we're about to hear now, right? It doesn't. It's informational. Yes, it's informational in correcting what we had said in our brief since there was an update on that. Let's let you get started, then, on the point you're here to argue today. Thank you. This case concerns one central question, whether a Federal court can exercise its longstanding authority to issue a writ of habeas corpus ad testificandum to facilitate the testimony of U.S. veteran Arnaldo Gianmarco before the Connecticut State legislature. The district court erred by, first, holding that it lacked jurisdiction because of 8 U.S.C. 1252, and, second, by suggesting that Mr. Gianmarco was not in custody for purposes of the writ. Now, first, the district court held that it lacked jurisdiction because it would be or the writ issuing it would be inextricably intertwined with removal proceedings and a denial of parole or a visa. That decision was erred because Mr. Gianmarco in this case merely seeks a testimonial benefit to testify before the Connecticut State legislature and not an immigration benefit or any of the other benefits that would accompany a grant of the administrative applications that he submitted to the agency. But the purpose of his testimony is what? The purpose of his testimony is in part to seek a pardon. That pardon would give Mr. Gianmarco eventually the opportunity to naturalize as a former U.S. veteran who served during hostilities because he's subject to special naturalization provisions. His testimony is also linked in a very real sense to his status. That's correct, Your Honor. But the fact that his testimony is linked to his naturalization shouldn't — doesn't raise any concerns under Delgado, for example, because Mr. Gianmarco, as a veteran, is — or Congress has laid out a special procedure for veterans like Mr. Gianmarco who have served during wartime hostilities, and these veterans under 8 U.S.C. 1440 can naturalize notwithstanding the removal order. And so in that sense, seeking the pardon and the — Why can't we grant a writ in these circumstances where the immigration authorities have decided he shouldn't be admitted into the country? Under other circumstances, people who need the testimony of individuals abroad go abroad and obtain it. Well, Your Honor, two reasons. First of all, the writ is special in the sense that it doesn't challenge the underlying restraints which the — which the agency has placed on Mr. Gianmarco. It only does in the sense that they decided they weren't going to admit him, even for this purpose, and you're saying the court should do it. Well, no, Your Honor. It doesn't — it doesn't challenge his removal order or even admit the — But it challenges the decision — it affects the decision or it supersedes the decision of the immigration authorities not to admit him for this purpose. Well, Your Honor, on a writ ad testificandum, the admission — or the decision about admission or parole is not necessarily required. For example, when a warden produces a Federal prisoner for, say, testimony before a State facility, it doesn't mean that the Federal warden puts the person out on supervised release for a day or gives the person a pardon for a day or commutes their sentence for a day. No, they remain subject to the restraints that previously they were subject to. That's precisely the case here as well. Mr. Gianmarco would remain subject to the restraints of the agency. The agency has the discretion to produce Mr. Gianmarco for a very limited amount of time, possibly detain him if they deem necessary, and without these other benefits. To go back to the custody point, your view is that we would order who? Who is the custodian? Who would we direct the writ to? The writ would be directed to the agency because — The agency has just decided in its own exercise of discretion not to admit him. So we would be telling the agency, though you've made that decision, we are now ordering you to admit him to the United States and allow him to travel to Connecticut to give testimony. The order to the agency would merely require that the agency produce Mr. Gianmarco for testimony. That doesn't necessarily mean that the agency has to grant him parole. But they don't feel that physical custody of him. He's in another country now. What they would be being ordered to do is to admit him to the United States, right? No, Your Honor, because admission has — Well, you know what I mean. Allow him to enter the country under circumstances where now he'd be arrested if he tried to come in. Allow him to enter for purposes of testifying. It is true that, yes, that the writ would require the agency to allow Mr. Gianmarco to enter the country. But that's not an immigration benefit in the sense that — No, but I'm now asking you a writ question. Uh-huh. Because normally the writ is directed to the person who has control of the body and says bring the body to wherever. In the circumstances here, one of the reasons that the courts did not think this was a custody circumstance is they don't have custody of him right now as we're speaking. You're saying when he appears at the border, allow him to enter. That's correct. But the — So now we have to consider that on one hand as to whether it's custody. But before we get to that, how is that anything other than telling the agency to do what it, in its discretion, decided not to do? Because Mr. Gianmarco is not seeking what these administrative applications that he submitted — Seeking what the agency refused to allow him, which is entering the country. Am I missing something here? No, Your Honor. But if Mr. Gianmarco, through seeking parole and admission through a visa, et cetera, are different things than what he's seeking, he's seeking to come to testify before the Connecticut State legislature, which they — The agency is saying no. The agency has said no, but in doing so has overrided the decision of Connecticut State legislators who have deemed his testimony necessary for a parting hearing which would provide Mr. Gianmarco potentially the opportunity to naturalize. But what Mr. Gianmarco is seeking doesn't — what Mr. Gianmarco is seeking is not parole or a visa. He wasn't seeking that when he applied to be admitted. I mean, he told the immigration authorities, right, that he wanted to be admitted so that he could go testify. He asked for — the prayer for relief simply asks for a — to allow — or to produce him for testimony before the Connecticut State legislature. It does not ask for admission or parole. The question, though, is the agency having said no, and that being something that we don't have jurisdiction to review, how is this — how do we review it effectively on a habeas — a writ of habeas corpus sub testificandum? Because the — the writ ad testificandum doesn't require review of the agency decision, nor is it inextricably intertwined with — with the agency decision, because the — the writ ad testificandum doesn't challenge the underlying strengths, which is — You know the reason we're not admitting him? Because we have evidence that he's committed three heinous crimes while abroad, and we just don't want him to be admitted. Of course that's a review. We're now considering whether we think that — that those facts and circumstances would warrant us denying the writ. But on the writ ad testificandum, Your Honor, that's precisely what the district court could do under the Twitty factors. But it would be a review. It would be — but the court exercises its own discretion in deciding whether to issue the writ, and therefore, the agency could produce the evidence regarding these crimes, and the court then could deny the writ because of these other crimes that the individual had committed in Italy, for example. So that doesn't raise a concern, for example, that the court would be — or that the court would be reviewing the agency decision, rather. Well, if they didn't, on that basis, aren't we basically saying we've reviewed it, we don't think it's such a big deal? The court would be taking into account the evidence that the government brought forth to the agency regarding these crimes and then denying it. That wouldn't necessarily entail review of the agency decision. Another practical question. In my experience with these kind of writs with people who are in custody, they stay in custody as in there are authorities in whose custody they are during the time they're going to testify. Who would those authorities be in this case? Again, that would be DHS. And this is returning to an earlier point that Your Honor brought up. Because Mr. Giammarco has been restrained by the authorities, he would — if the writ were to issue, DHS would then — well, Mr. Giammarco is willing to pay his own expenses, as we've repeatedly stated. But DHS would retain the discretion to physically detain him if they deemed that necessary in this case, to produce him briefly before the Connecticut State Legislature, and then physically place him outside of the country again after the testimony if that's what the agency deemed necessary. That shows a — purpose doesn't rigidly require that the person actually be in prison. I believe I'm correct that it applies also to people who are on parole or on probation who are subject to governmental orders, even if they're not actually held in jail. And that might be a parallel circumstance for somebody who seeks a writ to testify outside in a different State or something like that when he's under an order of probation not to leave the State. It would require that he be in the hands of a marshal. That's precisely correct, Your Honor. But it could, right? He could what? Sorry. It could result in physical custody. It could result in physical custody. The point is, or with respect to, I think, what you're getting to, Your Honor, is that Mr. G. Markle is under severe restraints at the moment. He's been restrained from testifying, which is sufficient for purposes of the ad test of a condom writ to place an individual in custody. But even if not, he's been restrained from testifying. He's called to a particular time and place, which this Court recently said in Nowakowski is a relevant factor for whether an individual is in custody. It can't affect the ultimate outcome, but I'm quite puzzled by the notion that it is impossible to set up a video link between Hartford and wherever he is in Italy. This Court, I mean, we're Luddites, and I'm confident we could figure that out. Somebody could figure out how to have it done. Do you know anything about that? Well, Your Honor, a couple of different points. First, the government has provided, I guess, shifting representations as to whether it could assist with videoconferencing testimony. But regardless, videoconferencing testimony is not sufficient in this case. The Connecticut State – I understand it's not the same thing, but I thought I read that they were saying it's just not possible to do in the first place. And, of course, video was never, as few people under 15 understand, video is not the same as in person. I understand that. But it's permitted under the federal rules, even in criminal cases. So, you know, to the extent you're coming to a federal court and saying he has to be admitted for this reason, if this were a criminal case in federal courts, there could very well be an order that the testimony be taken abroad. It may be the case, Your Honor, that it's permitted in some circumstances, but the Connecticut State legislators in this case have determined that his in-person testimony is required to assess his remorse and credibility as, frankly, a past criminal and one who has – That raises another question. Where's the Connecticut legislature in this? Usually a test of a condom, the ones I've seen, are by the authority seeking the testimony, not by the witness. Well, Your Honor, first of all, the Connecticut State legislature, through declarations to the district court and through an amicus brief to this court, has represented through Senator Coleman and Representative Tong that they have an interest in seeking Mr. Giamarco's testimony. And they authorize to speak for the legislature? I thought they spoke for themselves. May I – perhaps I looked at that too quickly. Yes. They speak for themselves and as the co-chairs of the Connecticut Judiciary Committee, as people who within the State of Connecticut have special powers to subpoena individuals because they're the chairs of the committee. They're the people sympathetic to him. I mean, let's be candid here. The point is, why are you – why is your client the proper party to seek this writ rather than the body that is looking for the testimony? Because he certainly has an interest in the testimony. And I would point the Court to there are cases in which individuals who have sought the add test – have sought the add test of a condom writ to writ themselves into another proceeding that's not, say, their criminal defense proceeding. So that's an example of where this has come up before. An individual has sought a writ to go into another proceeding. That's not the reason for which they're in custody currently. And courts have never raised in those cases issues of standing, et cetera. I could provide the citations later if the Court's interested, but that's an example of how this has actually come up before. And it's not always the body seeking the testimony that seeks the writ. Thank you. May it please the Court. Good morning, Your Honors. Cherise Pratt for the Government. Your Honors, the District Court was absolutely correct in dismissing this petition under 8 U.S.C. 1252a2bi for lack of subject matter jurisdiction. The Second Circuit's decision in Delgado controls. The jurisdiction will absolutely turn on the relief that the petitioner is seeking. Here, Gianmarco is absolutely seeking an immigration benefit. He's seeking to enter the United States. He's seeking a court order to compel him to enter the United States. The District Court correctly determined that such an order would invalidate the ICE's denial of humanitarian parole and his removal order and his bar of reentering the United States for 20 years until 2032. This Court should affirm dismissal for two reasons. First, the Court is without jurisdiction to consider the petition. Congress has plenary power to legislate on the subject of aliens. The federal government fully occupies the issue of who may pass through its borders. And second, Gianmarco was never in custody. He's a free Italian citizen residing in Italy, free to go anywhere in the world except the United States. He's not a prisoner. I'm not sure that's all that persuasive because if he arrives, if he travels to the border of the United States, at that point he is in custody. If he comes here, he is in the custody of ICE, right? Only if he illegally reenters the United States without permission. I mean, if he does, if he comes, if he comes now, he's been subpoenaed, and if he travels here pursuant to the subpoena and presents himself at the border, he's in custody at that point, right? That is a Connecticut Judiciary Committee subpoena. What? That subpoena is a state subpoena, and the state subpoena cannot override the federal government's control. It can't override. I said he's in the custody of your client when he arrives at the border. If he enters the United States, but they've denied him permission to enter. Right, but if he comes, you grab him, and he's in your custody. If he crosses the border. So what you're saying is you may not take custody of him, you may just deny him entry, and basically he would do what? Have to get on the plane back? Exactly. And where does he stay during the period between the plane that he exited and the plane he has to get back on to go, to return somewhere else? I guess. It would depend. Go to a hotel? He's in a form of custody. It's just not technically crossing the border, but he's in immigration authority custody, isn't he, or customs authority custody. I believe he's not in custody. If he's at the airport seeking to go back to the country, he'd have to go back where he came from. But they're not going to let him into the United States. Excuse me. The plane is not for three hours. Where does he spend the three hours, waiting from the plane he arrived on to the plane he leaves on? Do you just let him go to a hotel in the Waldorf? No, no, no. I guess he remains at the airport and gets on the next flight back. So he says, excuse me, I want to go in and buy some things at Abercrombie & Fitch. I'll be back for my plane. You let him go? He cannot enter the United States. Do you let him go or do you hold him? No. If he attempted to enter the United States, he would be held. Thank you. But that hasn't happened. He's sought permission. He's been denied. And as the court – I understand he's not in a jail, but there's a holding area where these people don't get to enter the airport, they don't get to go through customs. They are in that area. It's almost like a limbo until the plane that's going to take them out. Isn't that right? I believe so. But he's not in that area. He's in Italy. Is that custody for purposes of a writ? No, that is not custody for purposes of a writ. What do you cite as authority for the statement that that's not custody for purposes of a writ? I mean – A case on point on that? Well, I guess if we look at – all of the cases cited by Mr. Giammarco deal with people who are already – were subject to the court's jurisdiction, who were already on parole or probation. He's not on parole or probation. You don't have any authority for your proposition, right? I have, like, Arizona versus the United States that says the United States has sovereign control over its borders and who may enter and who may not. Let me ask you this because I haven't thought about this for a while, but if one is coming from Italy to the United States, which is a transfer that does not require a visa as a matter of course, if he travels under his real name and under his passport, is he going to hit some computer signal in Italy that's going to prevent him from being sold a ticket to the United States? Oh, I don't know the answer to that, Your Honor. See, counsel is nodding yes. That might suggest that he'd never become – he'd never be in the situation we're talking about. Okay. Let's let you finish your argument. Okay. So he's not a prisoner. He's not in custody. He never was in custody. This case is distinguishable from any of the cases cited by Mr. Giamarco for people who were on parole or maybe they were removed after the court already had jurisdiction in this case. You're missing something. You don't need this, do you, to prevail in this case? I mean, your client has refused him admission, and he is seeking to get our court to overturn that and tell your client that they've got to let him in. And we don't have authority to do that. That's correct. And Delgado controls. It doesn't depend on your fancy arguments that he's not in custody when he arrives at the border. That's correct. So you don't need to depend on your custody argument. That's correct. The Second Circuit's decision in Delgado controls look to the substance of the relief. They admit that the restraint they identify is the denial of the immigration benefits, parole, the tourist visa, end of story. If Your Honors have no further questions, I would rest. Thank you. Horthwist. Am I pronouncing your name right, by the way? It's Horthwist, but I know it's a little difficult to pronounce. Thank you. Before I begin, I just want to note briefly, with respect to Your Honors' question about electronic denial outside the U.S. that happened in this case, you can look on pages 9 and 10 of our brief with respect to the ESTA system, which Mr. Giammarco applied for, but it's just an additional restraint, essentially, that the agency has placed on Mr. Giammarco. Your Honor, the government's position in this case is it's a radical one. Any time that an individual seeks to or first applies to the agency to come to the United States and then seeks a writ, add testificandum, this Court essentially is, or any Court, is deprived of jurisdiction to order an individual into the United States. That's the logic. We didn't make that rule. That's a rule made by Congress, that a discretionary decision of the agency is not subject to our thinking better about it than saying, no, we think you should let him in. But, Your Honor, the writ doesn't challenge those restraints, because Mr. Giammarco's just seeking to testify. If he were seeking to — He's not just seeking to testify. He's seeking to enter and then testify. And the part that the agency has nothing against is testifying. The part that they're saying he can't do is enter the United States. Well, the agency has said that it believes in overriding the State legislator's determination that his testimony is not necessary. But beside the point, Mr. Giammarco — They made an error of law. We have jurisdiction if they've made an error of law. The district court, the agency, I'm — because Mr. Giammarco is simply seeking the writ, there's not a question of whether the agency made a — a error of law, because the writ — the court — That's not a question. That's correct. Because in seeking just to testify, Mr. Giammarco's not seeking an immigration benefit to come, freely spend time, move around in the United States, possibly with multiple entries. He's not seeking an immigration benefit. He's seeking to come in for a day and testify. Respectfully, he's just seeking to testify. That's all it is, just to come in to do that for a very limited amount of time. And that's — that doesn't invoke the — or create problems with respect to the government's plenary power over immigration in this case or the administrative decisions that it previously issued. It seems to me that your argument is reducing to it's not a big deal, so it doesn't have that big an effect on — on immigration discretion. But I don't think you can say it's unrelated to it. I mean, you know, one could spin hypotheticals here. What if the state legislature decided it wanted to hear from Edward Snowden and subpoenaed him? And Mr. Snowden, we're in the position your client is. Now, you know, just because it's such a different circumstance, it strikes us as The principle is different because the court can use the factors laid out in Twitty to deny frivolous applications for the writ if — It wouldn't be frivolous at all. They want to hear him testify. That's correct. They would want to hear him testify, but the court might decide in its discretion, which it has under the writ ad testificandum, to deny the writ. That's not — I agree. And that's the discretion that's placed in the first instance with the immigration authorities when what it takes is getting the person into the country. But, Your Honor, for example, again, when a Federal warden produces an individual for testimony before the state legislature, that's not review of the underlying restraints that the individual is subject to. The individual is merely produced before the legislature for the brief period of time in which the testimony occurs, and then taken back to the custody that they were in before. Is there any difference between the case you're talking about and supposing somebody who has been denied admission says, my daughter is giving birth at a hospital in New York City tomorrow, and I want to be there for — to help her and to be present at the birth, and all I'm asking is just to be allowed to come in just for the day, just for as long as it takes, even less than a day, if it gets over quickly, and then go back out. Would we have authority to tell — to tell the INS, you have to let her in? There are differences there because that would be the great writ. An individual would have been denied to enter the United States, and then that — that — or the jurisdiction there is obviously barred under Section 1252 because the individual is not going to be able to challenge the — the decision to — to enter the United States. That's not what Mr. Giamarco is seeking to do here because he's seeking the writ to produce him for testimony before the State Legislature, and it doesn't challenge the underlying restraints. And further, I think the interests here are different as well from any of the hypotheticals that the Court has suggested here. The Connecticut State Legislature is unique in that it has the pardon power.  So the Connecticut State Legislature has a great interest in seeing Mr. Giamarco come testify, who was a resident of their state for over 50 years before the Department of Homeland Security decided to deport him. That interest is strong in this case, and this Court should defer to that determination by the State and — and order the agency to produce Mr. Giamarco for testimony. Thank you. It should go with — it's terribly obvious, but the Court's grateful to you for your pro bono representations. Thank you very much. And notes that we know who Jerome Frank is, so. Thank you. Greatsack v. Greatsack. Hello. My name is Krasina Gratsack. Ms. Greatsack, just pull the microphone down a little bit more. Okay. Okay. Thank you. Okay. So, basically, I'd like to ask Your Honor for — to reopen my case because I filed a motion to dismiss the case. I — We never granted that because — Oh. I'm withdrawing with prejudice, and I gather you're not, so we're ready to hear your appeal. Okay. The point is I'm in lots of physical pain at this moment. I — due to extraordinary circumstances, something happened to me recently, and I'm on only two medications. They do not work. So I contact my doctor, and he refilled me to the special clinic, and I have to go through the additional numbers of tests, and it's going to happen on Friday at 10. And I was trying to reschedule that appointment for Friday, the last week, but the doctor was not available for me. So at this point, I'm actually not very ready to disappear. I have such a problem even walking, and I made it through this physical discomfort. I wanted to come. I wanted to say that all my claims under — in my appeal has merits, and I want to appeal this case, and I want to hire a Polish-English interpreter. I was writing my brief the way — this way. I wrote everything in Polish, and I went to the agency, and I translated. And I'd like to ask this court for permission to submit my reply, and I'm going to do the same way. I'm going to write everything in Polish and translate it, and I'd like to ask this court for permission to extend the time I missed for the reply due to extraordinary circumstances.